**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DESTINY GARNER,

    Plaintiff,      Case No.
              Hon.

v.

LIFETIME DENTAL CARE
OF MICHIGAN, P.C., d/b/a/
BROWNSTOWN DENTAL CARE,
and HEARTLAND DENTAL LLC,

    Defendants.

---

Amanda M. Ghannam (P83065)
NACHTLAW, P.C.
*Attorneys for Plaintiff*
2200 Hunt St.
Detroit, MI 48207
(734) 663-7550
aghannam@nachtlaw.com

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff, Destiny Garner, brings this employment discrimination action against Defendants, Lifetime Dental Care of Michigan, P.C., d/b/a Brownstown Dental Care ("Brownstown Dental") and Heartland Dental LLC, as follows:

**INTRODUCTION**

Plaintiff, Destiny Garner, worked as a dental assistant at Brownstown Dental Care, a dentist's office in Brownstown, Michigan. Ms. Garner was the only

Black/African-American employee in the office. She enjoyed and excelled at her job until May 2022 when, in conversation with her non-Black colleagues, she commented that a recent mass shooting targeting a Black community in Buffalo, New York, had been a "hate crime." Unfortunately, Ms. Garner's comment advocating for an end to anti-Black hate crimes seemed to upset her colleagues. Defendants terminated Ms. Garner's employment just days after this conversation. Ms. Garner now brings this employment discrimination case pursuant to Title VII of the Civil Rights Act, the Elliott-Larsen Civil Rights Act, and 42 U.S.C. 1981.

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Destiny Garner, is a resident of Romulus, Michigan, Wayne County. Ms. Garner is Black/African-American.

2. Defendant, Lifetime Dental Care of Michigan P.C. d/b/a Brownstown Dental Care, is a company with its registered business address in Lansing, Michigan, and doing business within this judicial district.

3. Defendant, Heartland Dental LLC, is a company with its registered business address in Lansing Michigan, and doing business within this judicial district.

4. This Court has federal question jurisdiction pursuant to 42 U.S.C. 1981, Title VII of the Civil Rights Act of 1964, as amended.

5. Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. 1367 as they arise from the same case and controversy.

6. Venue in this Court is proper pursuant to 28 U.S.C. 1391 as a substantial part of the events and omissions giving rise to this Complaint occurred in Brownstown Charter Township, Wayne County, Michigan, within this judicial district.

7. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and files this Complaint within 90 days of her receipt of notice of right to sue.

## GENERAL ALLEGATIONS

8. Plaintiff, Ms. Destiny Garner, began her employment with Defendants on or about February 5, 2020.

9. On information and belief, Defendants were joint employers of Plaintiff.

10. According to Defendant Heartland Dental LLC ("Heartland"), it "provides non-clinical administrative services to Brownstown Dental Care."

11. Ms. Garner worked at Defendant Brownstown Dental Care's location at 19249 Allen Rd, Brownstown Charter Twp, MI 48183 and reported to Dr. Ben Hanson.

12.     Dr. Hanson is white/Caucasian.

13.     Ms. Garner worked as a dental assistant while pursuing her college degree in dental hygiene and applied science.

14.     Ms. Garner was the only Black/African-American employee at Brownstown Dental Care ("Brownstown Dental").

15.     At all relevant times, Ms. Garner performed her job duties excellently and acted professionally.

16.     Ms. Garner never received any negative performance reviews or disciplinary write-ups.

17.     Ms. Garner worked for Defendants for over a year.

18.     Throughout her employment, Defendants treated Ms. Garner differently than her non-Black coworkers.

19.     For example, Dr. Hanson would provide lunch and cake for the whole staff on non-Black employees' birthdays, but he refused to do so for Ms. Garner.

20.     Defendants also required Ms. Garner to work later than her schedule provided to clean up after coworkers who refused to clean up after themselves, even when Ms. Garner raised the issue with management.

21.     On or about May 19, 2022, Ms. Garner went to lunch with her coworkers: Dr. Nikki Moshiri; Ms. Dalia Sarratos; and Ms. Emma Zaluski.

22. Prior to this date, Ms. Garner enjoyed a cordial and professional relationship with her colleagues.

23. As the staff ate lunch together, the conversation turned to an event that had occurred several days prior, on May 14, 2022 in Buffalo, New York. A gunman had shot 13 and killed 10 people in a horrific, racially-motivated mass shooting. All of the victims who were killed were Black. The gunman was later sentenced to life in prison without parole for one count of domestic terrorism motivated by hate and ten counts of murder.[1]

24. Regarding the shooter, one of Ms. Garner's colleagues commented that "mental illness is so sad."

25. Ms. Garner commented that the mass shooting had been a racially motivated hate crime.

26. Ms. Zaluski asked Ms. Garner "what's a hate crime?"

27. Ms. Garner responded that a hate crime is "when someone does something violent to someone because of their race."

28. At the time, no one expressed discomfort with Ms. Garner's comment.

29. However, it soon became clear that Ms. Garner's non-Black colleagues had a problem with her advocating for an end to racially motivated

---

[1] See https://buffalonews.com/news/local/complete-coverage-10-killed-3-wounded-in-mass-shooting-at-buffalo-supermarket/collection_e8c7df32-d402-11ec-9ebc-e39ca6890844.html, last accessed October 1, 2023.

violence.

30.     Within the next few days, Defendant Brownstown Dental's Operations Manager, Megan Blanck, called Ms. Garner into her office and told her: "Make sure you're not talking about race in the office."

31.     On or about May 24, 2022, Ms. Blanck summoned Ms. Garner to her office, where Dr. Hanson was waiting for her.

32.     Dr. Hanson told Ms. Garner that it had come to his attention that she had made racial remarks that made her coworkers uncomfortable.

33.     Dr. Hanson asked Ms. Blanck if she had "gone over the list".

34.     Ms. Blanck responded that she had.

35.     Ms. Garner asked, "what list?"

36.     Dr. Hanson then informed Ms. Garner that her employment had been terminated and she would receive a list of "racial slurs" and a document stating the reasons for her termination in the mail.

37.     Ms. Garner never received any such list (because she had never used racial slurs in the workplace).

38.     Ms. Garner had never made any offensive race-related comments or statements in the workplace.

39.     In fact, Ms. Garner's colleague, Ms. Dalia Sarratos, had previously made statements regarding her own race to Ms. Garner.

6

40. For example, Ms. Sarratos, who is of Hispanic descent, told Ms. Garner that Dr. Hanson had never asked her to work in Defendants' Howell, Michigan location because "Howell is a racist city"; "all the other staff members are white"; and "it would be uncomfortable for [her] to be there, but the patients might not notice because [she is] light-skinned."

41. On information and belief, Ms. Sarratos was not disciplined or terminated for her statements.

## COUNT I
### Single Motive - Title VII Racial Discrimination
### 42 U.S.C. § 2000e-2(a)(1)

42. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

43. At all relevant times, Defendant was an employer with greater than 15 employees, and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

44. Plaintiff is a member of a protected group under Title VII due to her race (Black/African-American).

45. Defendant discriminated against Plaintiff because of her race in the terms and conditions of her employment in violation of 42 U.S.C. § 2000e-2(a)(1).

46. Defendant subjected Plaintiff to adverse employment actions up to and including termination.

7

47.    But for Plaintiff's race, Defendant would not have subjected Plaintiff to such adverse actions.

48.    Defendant's course of conduct was done with reckless disregard to Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

## COUNT II
### Mixed Motive - Title VII Racial Discrimination
### 42 U.S.C. § 2000e-2(m)

49.    Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

50.    At all relevant times, Defendant was an employer with greater than 15 employees, and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

51.    Plaintiff is a member of a protected group under Title VII due to her race (Black/African-American).

52.    Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her race, even though other factors may have motivated the termination in violation of 42 U.S.C. § 2000e-2(m).

53.    Defendant subjected Plaintiff to adverse employment actions up to and including termination.

54.    Defendant's course of conduct was done with reckless disregard to Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

8

## COUNT III Racial Discrimination in Contracting
## 42 U.S.C. § 1981

55.    Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

56.    By the conduct described above, Defendant intentionally deprived Plaintiff, who is African-American, of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendant in violation of 42 U.S.C. 1981.

57.    Defendant's course of conduct was done with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to unlimited punitive damages.

## COUNT IV
## Elliott-Larsen Civil Rights Act Racial Discrimination
## M.C.L. § 37.2202(1)(a)

58.    Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

59.    At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101.

60.    Plaintiff is a member of a protected group because of her race (Black/African-American).

61.     Defendant subjected Plaintiff to adverse employment actions, up to and including termination.

62.     Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her race in violation of M.C.L. § 37.2202(1)(a).

63.     But for Plaintiff's race, Defendant would not have terminated her.

## COUNT V
### Title VII Retaliation
### 42 U.S.C. § 2000e-3(a)

64.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

65.     At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

66.     Plaintiff engaged in federally protected activity including but not limited to opposing racially-motivated hate crimes.

67.     Defendant subjected Plaintiff to adverse employment actions, up to and including termination.

68.     Defendant's actions were motivated by unlawful retaliation towards Plaintiff because of his protected activity in violation of 42 U.S.C. § 2000e-3(a).

69.     But for Plaintiff's protected activity, Defendant would not have terminated him.

10

70. Defendant's conduct was done with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

## COUNT VI
### Racial Retaliation in Contracting
### 42 U.S.C. § 1981

71. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

72. By the conduct described above, Defendant intentionally retaliated against Plaintiff for her opposition to Defendant's conduct which violated his right to creation, performance, enjoyment, and all benefits and privileges of a contractual employment relationship with Defendant, regardless of her race, in violation of 42 U.S.C. § 1981. See *CBOCS West, Inc. v. Humphries,* 552 U.S. 442 (2008).

73. Defendant's conduct was done with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to unlimited punitive damages.

## COUNT VII
### Elliott-Larsen Civil Rights Act Retaliation
### M.C.L. § 37.2701(a)

74. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

75. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights

11

Act, M.C.L. § 37.2101.

76.     Plaintiff engaged in protected activity, including but not limited to opposing racially-motivated hate crimes.

77.     Defendant subjected Plaintiff to adverse employment actions, up to and including termination.

78.     Defendant's conduct was motivated by unlawful retaliation against Plaintiff because of his protected activity in violation of MCL § 37.2701(a).

79.     But for Plaintiff's protected activity, Defendant would not have terminated her.

## DAMAGES

80.     As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and impairment of her earning capacity and ability to work, and will so suffer in the future.

81.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## RELIEF REQUESTED

Wherefore, Plaintiff Destiny Garner prays that this Honorable Court grant the following relief:

a) Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of 42 U.S.C. 1981, Title VII of the Civil Rights Act of 1964, and the Elliott Larsen Civil Rights Act;

b) Award Plaintiff all lost wages, past and future, to which she is entitled;

c) Award Plaintiff compensatory damages;

d) Award Plaintiff punitive damages;

e) Award Plaintiff reasonable attorney's fees, costs, and interest; and

f) Award such other relief as this Court deems just and proper.

Wherefore, Plaintiff respectfully requests that this Court enter judgment against Defendant and all relief requested in this Complaint.

Respectfully submitted,

**Nacht & Roumel, P.C**.

By: */s/ Amanda M. Ghannam*
Amanda M. Ghannam (P83065)
Attorneys for Plaintiff
2200 Hunt St.
Detroit, MI 48207
(734) 663-7550
aghannam@nachtlaw.com

Dated: October 2, 2023

13